# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
In re:                                  :
                                        :
OWENS CORNING, et al.,                  :        Civil Action No. 06-184 (JPF)
                                        :
                        Debtors.        :
                                        :
------------------------------------------------------x
                                        :
AD HOC COMMITTEE OF                     :
PREFERRED AND EQUITY SECURITY           :
HOLDERS,                                :
                                        :
                        Appellants,     :        Bankruptcy Case No. 00-3837
                                        :
            v.                          :
                                        :
OWENS CORNING, et al.,                  :
                                        :
                        Appellees.      :
------------------------------------------------------x
```

## APPELLANTS' OPENING BRIEF

| CONNOLLY BOVE LODGE | BROWN RUDNICK | BROWN RUDNICK |
|---|---|---|
| & HUTZ LLP | BERLACK ISRAELS LLP | BERLACK ISRAELS LLP |
| Jeffrey C. Wisler (No. 2795) | Edward S. Weisfelner | Anthony L. Gray |
| Christina M. Thompson (No. 3976) | Robert J. Stark | John C. Elstad |
| Marc J. Phillips (No. 4445) | 7 Times Square | One Financial Center |
| 1007 N. Orange Street | New York, NY 10036 | Boston, MA 02111 |
| Wilmington, DE 19801 | (212) 209-4800 | (617) 856-8200 |
| (302) 658-9141 | | |

*Attorneys for Ad Hoc Committee of Preferred and Equity Security Holders*

Dated: April 3, 2006

## **TABLE OF CONTENTS**

Page

BASIS FOR APPELLATE JURISDICTION ............................................................1

ISSUES PRESENTED........................................................................................1

STANDARD OF REVIEW...................................................................................2

STATEMENT OF THE CASE ..............................................................................2

STATEMENT OF THE FACTS ............................................................................4

ARGUMENT ...................................................................................................5

    I.  The Bankruptcy Court Improperly Imposed The Burden Of Proof On The Objectors To The Exclusivity Motion...................................................................................5

    II.  The Bankruptcy Court Clearly Erred in Entering the Exclusivity Order Because The Debtors Failed To Satisfy Their Burden To Establish That Cause Existed To Extend Their Exclusive Periods.................................................................................7

CONCLUSION ...............................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Bank of America National Trust and Sav. Assn. v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999).........................................................................................................9

*In re Babcock and Wilcox Co.*, 2001 U.S. Dist. LEXIS 9660 (E.D. La. 2001) ............................9

*In re Babcock & Wilcox Co., et al.*, No. 00-10992 (Bankr. E.D. La.).........................................10

*In re Capital West Investors*, 186 B.R. 497 (N.D. Cal. 1995).....................................................9

*In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich. 1997).....................................6, 7, 8

*In re Express One International, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996) ..............................6

*In re General Teamsters*, 265 F.3d 869 (9th Cir. 2001) .............................................................9

*In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128 (D.N.J. 1995) ........................................2, 12

*In re Henry Mayo Newhall Memorial Hospital*, 282 B.R. 444 (9th Cir. B.A.P. 2002).................2

*In re Lake In The Woods*, 10 B.R. 338 (E.D. Mich. 1981) ..........................................................2

*In re Mirant Corp.*, 2004 U.S. Dist. LEXIS 19796 (N.D. Tex. 2004).......................................2, 6

*In re Texaco, Inc.*, 81 B.R. 806 (Bankr. S.D.N.Y. 1988)...........................................................12

*In re USG Corp. et al.*, Case No. 01-2094 (JKF) (Bankr. D. Del.) ............................................10

*Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233 (5th Cir. 1988) ...............................9

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253 (3d Cir. 1995) ...........................2

**Federal Statutes**

*11 U.S.C. § 1121(d)* .............................................................................................................*Passim*

*28 U.S.C. § 158(a)(2)*.....................................................................................................................*1*

**State Statutes**

*Del. Code Ann.* Tit. 8 §211.....................................................................................................*11*

## BASIS FOR APPELLATE JURISDICTION

The United States District Court for the District of Delaware (the "Court") has jurisdiction to hear this appeal from the Order, Pursuant to 11 U.S.C. § 1121(d), Further Extending The Exclusive Periods During Which The Debtors May File Plans Of Reorganization And Solicit Acceptances Thereto [Docket No. 16933] dated February 13, 2006 (the "Exclusivity Order") pursuant to 28 U.S.C. § 158(a)(2), which provides that "the district courts of the United States shall have jurisdiction to hear appeals . . . from interlocutory orders and decrees issued under Section 1121(d) of title 11 increasing or reducing the time periods referred to in Section 1121 of such title."

## ISSUES PRESENTED

1.      Whether the United States Bankruptcy Court for the District of Delaware (Honorable Judith K. Fitzgerald) (the "Bankruptcy Court") erred in granting the Exclusivity Motion (defined below) and entering the Exclusivity Order.

2.      Whether the Bankruptcy Court erred by improperly imposing on the parties objecting to the Exclusivity Motion the burden of showing cause to terminate exclusivity, when it was the burden of Owens Corning and its affiliated debtors (collectively, the "Debtors"), pursuant to Section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), to show cause for extending the Debtors' exclusive periods.

3.      Whether the Bankruptcy Court erred, pursuant to Bankruptcy Code Section 1121(d), in holding, in effect, that the Debtors had met their burden to show that cause existed to extend the Debtors' exclusive periods, particularly in light of the Debtors' lack of good faith in their plan negotiations and their failure, unlike similarly situated Chapter 11 debtors facing large asbestos-related liabilities, to include provisions in their current reorganization plan that

maximize estate value for all constituents, including the Debtors' preferred and equity security holders.

## STANDARD OF REVIEW

A bankruptcy court order extending a debtor's exclusive periods is reviewed *de novo*. See In re Henry Mayo Newhall Memorial Hospital, 282 B.R. 444, 452 (9th Cir. B.A.P. 2002) ("the question of § 1121(d) 'cause' is subject to *de novo* review as a mixed question of law and fact in which the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the rule"); In re Lake In The Woods, 10 B.R. 338, 342-43 (E.D. Mich. 1981) (bankruptcy court's finding of cause for extension of exclusivity erroneous as a matter of law). But see In re Geriatrics Nursing Home, Inc., 187 B.R. 128, 131 (D.N.J. 1995) (bankruptcy court's decision to extend debtor's periods of exclusivity reviewed for an abuse of discretion).

More generally, a bankruptcy court's factual findings are reviewed for clear error, while its interpretation of the law is reviewed *de novo*. See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 257 (3d Cir. 1995). In particular, the allocation of the burden of proof is a legal issue that is reviewed *de novo*. See In re Mirant Corp., 2004 U.S. Dist. LEXIS 19796, *7 (N.D. Tex. 2004).

## STATEMENT OF THE CASE

### I.    Nature Of The Case

The *Ad Hoc* Committee of Preferred and Equity Security Holders (the "*Ad Hoc* Committee")[1] appeals the Exclusivity Order extending the Debtors' exclusive periods to file and

---

[1] The members of the *Ad Hoc* Committee currently are (a) Catalyst Investment Management Co., LLC, (b) Deutsche Bank Securities Inc., (c) Hain Capital Group, LLC, (d) Harbinger Capital Partners Master Fund I, Ltd. f/k/a Harbert Distressed Investment Master Fund, Ltd., (e) Plainfield Asset Management LLC, and (f) Tudor Investment Corporation. The *Ad Hoc* Committee's members currently hold, individually and/or through their funds and/or managed accounts, (a) approximately 8.675 million shares in the aggregate of Owens Corning common stock, which holdings constitute approximately 16 % of all outstanding shares of such stock, and (b) approximately 2.2 million shares in the aggregate of certain 6½% convertible monthly income preferred securities issued by a non-

to solicit acceptances of a plan of reorganization until July 31, 2006.

## II.   Course Of The Proceedings

The Debtors filed their Motion Of Debtors For Order, Pursuant To 11 U.S.C. § 1121(d), Granting Further Extension Of Exclusive Periods To File And Solicit Acceptances Of Plan Of Reorganization [Docket No. 16571] (the "Exclusivity Motion") on December 31, 2005.

Contemporaneously with filing their Exclusivity Motion, the Debtors filed their Disclosure Statement (the "Disclosure Statement") With Respect To Fifth Amended Joint Plan Of Reorganization For Owens Corning And Its Affiliated Debtors And Debtors-In-Possession (the "Plan") [Docket No.16569].  Preferred security holders receive nothing and equity security holders' interests are wiped out under the Plan.  See Disclosure Statement at 143-44.

The Ad Hoc Committee filed its Objection Of Ad Hoc Committee Of Preferred And Equity Holders To Debtors' Motion For Order, Pursuant to 11 U.S.C. § 1121(d), Granting Further Extension Of Exclusive Period To File And Solicit Acceptances Of Plan Of Reorganization [Docket No. 16695] on January 13, 2006 (the "Ad Hoc Committee Objection"). The Ad Hoc Committee Objection incorporated by reference the Ad Hoc Committee's motion seeking appointment of an official equity committee [Docket No. 16495] and its motion seeking confirmation that it may bring an action in the Delaware Chancery Court to compel Owens Corning to hold an annual shareholders' meeting [Document No. 16496] (the "Shareholder Meeting Motion").

Certain other parties-in-interest representing significant creditor constituencies also objected to the Exclusivity Motion.  See Objection Of Official Representative Of The Bondholders And Trade Creditors To Motion Of Debtors For Order, Pursuant To 11 U.S.C.

---

debtor affiliate of Owens Corning, which holdings constitute approximately 56% of all issued and outstanding shares of such preferred securities.

§ 1121(d), Further Extending The Exclusivity Periods During Which The Debtors May File Plans Of Reorganization And Solicit Acceptances Thereto [Docket No. 16696] (the "Official Creditors' Representative" and the "Official Creditor Objection") and [Corrected] Objection Of Certain Bondholders To Motion Of Debtors For Order, Pursuant To 11 U.S.C. §1121(d), Granting Further Extension Of Exclusive Periods To File And Solicit Acceptances Of Plan Of Reorganization [Docket No. 16817] (the "Bondholders" and the "Bondholder Objection").  The Official Committee of Asbestos Claimants [Docket No. 16709] and James J. McMonagle, Legal Representative for Future Claimants [Docket No. 16675] supported the Exclusivity Motion.

A hearing was held on the Exclusivity Motion on January 30, 2006 (the "January 30 Hearing"). See Transcript of hearing before the Bankruptcy Court held on January 30, 2006 (the "Transcript").

**III.    Disposition In The Court Below**

The Bankruptcy Court entered the Exclusivity Order on February 13, 2006.

## STATEMENT OF THE FACTS

On October 5, 2000, the Debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 11 of the Bankruptcy Code.  Accordingly, the Debtors have been in bankruptcy for more than 5 years.  See Exclusivity Motion at 2.  The Exclusivity Motion was the Debtors' eleventh request for an extension of their exclusive periods.  See  Ad Hoc Committee Objection at 1.

The Bondholders and the Ad Hoc Committee both objected to the Exclusivity Motion because, among other things, the Debtors had not shown good faith in proposing their Plan in that the Debtors had not consulted with them in formulating and documenting it.  See Bondholder Objection at 2, Transcript at 38.

4

The Official Creditors' Representative and the Bondholders further averred that, if the Debtors' exclusivity periods were not extended, they would be prepared to propose alternative plans of reorganization that would maximize estate value. See Official Creditor Objection at 4; Bondholder Objection at 3, 5.

In addition, the Bondholders and the *Ad Hoc* Committee objected to the Exclusivity Motion specifically on the grounds that the Debtors' Plan failed to maximize estate value because it failed, *inter alia*, to take into account possible enactment of asbestos reform legislation presently pending before the United States Congress, the Fairness in Asbestos Injury Resolution Act (the "FAIR Act"), and that such failure was further evidence of lack of good faith. See Bondholder Objection at 3; *Ad Hoc* Committee Objection at 3.

Lastly, the *Ad Hoc* Committee, as further evidence of the Debtors' lack of good faith in proposing their plan, cited to the Debtors' failure to take account of the possibility that the decision by this Court estimating the Debtors' present and future asbestos liability at $7 billion (the "Estimation Order") might be reversed on appeal by the Third Circuit Court of Appeals, see Transcript at 58, 62-63, and to the fact that the Debtors' management and directors did not have valid authority to propose the Plan because they had not faced an election by shareholders in over 5 years despite the requirement to hold such elections on an annual basis. See Shareholder Meeting Motion at 5-9.

## ARGUMENT

### I.    The Bankruptcy Court Improperly Imposed The Burden Of Proof On The Objectors To The Exclusivity Motion

The Bankruptcy Code provides "on request of a party in interest made within the respective periods specified in subsection (b) and (c) of this Section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period

referred to in this Section." 11 U.S.C. § 1121(d)(1).

A debtor has the burden of proof to establish that there is cause to extend the debtor's

exclusive periods. See Mirant, 2004 U.S. Dist. LEXIS 19796 at *7-8; In re Dow Corning Corp.,

208 B.R. 661, 663-64 (Bankr. E.D. Mich. 1997); In re Express One International, Inc., 194 B.R.

98, 100 (Bankr. E.D. Tex. 1996). Moreover, the burden gets heavier with each successive

extension sought by a debtor to its exclusive periods. See Dow Corning, 208 B.R. at 664.

Unfortunately, during the January 30 Hearing, the Bankruptcy Court improperly shifted

the burden onto the objectors to the Exclusivity Motion:

> THE COURT:  All right.  I see no basis on which to
> terminate the debtor's exclusivity under these circumstances.  The
> debtor does have a plan on the table.  I don't know whether it will
> be confirmed, but at least facially, it looks as though it is
> confirmable.  I haven't heard objections and so I'm not making
> rulings, but my statement to the debtor was to put a plan of record
> that at least facially is confirmable.  The debtor's done it.  Now,
> whether something will come up that makes it un-confirmable, I
> don't know, but at least from a first blush, first read, *prima facie*
> level it looks as though this plan can be confirmed.  So, I think the
> debtor has done what the Court has ordered and what its fiduciary
> obligations are to all constituents.  I do want the debtor to continue
> to negotiate with the bonds because I think that's an important
> aspect of this case, and perhaps there is still some adjustment that
> can be made that will get the bonds onboard.  With respect to the
> equity, I haven't heard anything in this case at this point that
> convinces me that there is any value for equity in this case, and,
> you know, that's a sad thing.  I'm not happy with that resolution,
> nonetheless, it seems to me right now to be the state of the facts.
> To the extent that the debtor wants to somehow or other tweak this
> to incorporate whatever the FAIR Act is going to be if and when
> it's ever passed at some point in the future, certainly I guess you
> can build plans on hypotheticals if you choose to do it and the
> parties agree.  I think you've got a higher or not – I was going to
> say burden, but I don't mean it in that sense.  I think you'll have a
> more difficult task if it's not going to be a cash plan then USG did
> in negotiating.  You know, if you want to take a stab at it, I think
> that's the debtor's obligation, but I – in no way do I see how the
> debtor ought to be compelled to take advantage of an act that is not
> legislation, that's gone through several modifications already and

that may, if it ever gets passed, come out of Congress as a much different vehicle than it went it. So, I don't know how you accommodate that action without the consent of all the constituents who would be governed by that, and that would, in that instance, I think, include equity, but there is no law at the moment that the debtor has to take cognizance of, and I'm certainly not going to order the debtor to take cognizance of a statute that doesn't exist.

Transcript at 45-47 (emphasis supplied).

It is clear from the above ruling from the bench, that the Bankruptcy Court improperly believed that the objectors to the Exclusivity Motion had the burden of showing that cause <u>did not</u> exist for extending the Debtors' exclusive periods, when it made the following key statement: "I see no basis on which to terminate the debtor's exclusivity under these circumstances." Parties seeking early termination of a debtor's exclusivity have the burden to show cause for such termination. <u>See</u> <u>Dow Corning</u>, 208 B.R. at 663. But that is not the case here. To the contrary, the Debtors were seeking a further extension of their exclusivity which would have otherwise lapsed by operation of law. In such circumstances, the Debtors had the burden of proof to show cause for a further extension. <u>See</u> <u>id</u>.

Accordingly, the Bankruptcy Court committed clear reversible error by effectively requiring the objectors to the Exclusivity Motion to show why the Debtors' exclusivity, already extended 10 previous times, should be "terminated" rather than placing the burden on the Debtors themselves, who had brought the Exclusivity Motion, to show cause why their exclusivity should be extended through July 31, 2006.

**II.     The Bankruptcy Court Clearly Erred in Entering the Exclusivity Order Because The Debtors Failed To Satisfy Their Burden To Establish That Cause Existed To Extend Their Exclusive Periods**

Courts generally consider certain factors (the "Factors") when deciding whether cause exists to extend a debtor's exclusivity:

    1.      the size and complexity of the case;

2.  the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

3.  the existence of good faith progress toward reorganization;

4.  the fact that the debtor is paying its bills as they become due;

5.  whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6.  whether the debtor has made progress in negotiations with its creditors;

7.  the amount of time which has elapsed in the case;

8.  whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9.  whether an unresolved contingency exists.

Dow Corning, 208 B.R. at 664-65.

The Exclusivity Order superficially addressed the Factors by reciting the following findings in support of extending the Debtors' exclusive periods until July 31, 2006:

> For the reasons set forth in the Motion, sufficient cause exists to extend the Exclusive Periods through and including July 31, 2006, because, among other things:
>
> (1)  the Debtors' cases are extremely large and complex;
>
> (2)  the Debtors have made good faith progress toward proposing a plan of reorganization;
>
> (3)  sufficient time is necessary to permit the Debtors to negotiate an amended plan of reorganization;
>
> (4)  the Debtors are not using exclusivity to prejudice creditors; and
>
> (5)  granting the relief requested would not prejudice any party-in-interest.

Exclusivity Order at 2.

However, the Bankruptcy Court clearly erred in finding that the Debtors had made good faith progress in proposing their Plan and that granting a further extension to exclusivity would not prejudice any party-in-interest. Such findings are not supported by the record. The clear, reversible error is all the more egregious because the Exclusivity Motion represented the Debtors' eleventh request for an extension of exclusivity and their burden in showing cause for an extension was that much more heavy.

The Debtors have not proposed their Plan in good faith because the Debtors refused to consult with the Bondholders and the *Ad Hoc* Committee. <u>See</u> Bondholder Objection at 2; Transcript at 38. Despite the undisputed record, the Bankruptcy Court nonetheless found that the Debtors had formulated their Plan in good faith and were not using their exclusivity to prejudice other parties-in-interest. This is clear, reversible error.

In addition, the Plan has not been proposed in good faith because it clearly fails to maximize estate value for all constituents. It is well-settled that one of the primary duties of a debtor-in-possession under the Bankruptcy Code is to maximize the value of the estate. <u>See, e.g.</u> <u>Bank of America National Trust and Sav. Assn. v. 203 North LaSalle Street Partnership</u>, 526 U.S. 434, 453 (1999) (noting the two recognized policies underlying Chapter 11 of preserving going concerns and maximizing the value of the estate) (citation omitted); <u>Louisiana World Exposition v. Fed. Ins. Co.</u>, 858 F.2d 233, 245-46 (5th Cir. 1988) (holding that a debtor-in-possession enjoys the same rights and duties as a trustee, including the duty to maximize the value of the estate); <u>In re Babcock and Wilcox Co.</u>, 2001 U.S. Dist. LEXIS 9660, *12-*13 (E.D. La. 2001) (same). Not surprisingly, maximizing the value of the estate is a principal goal of the Bankruptcy Code that should be considered in determining whether a plan was proposed in good faith. <u>See</u> <u>In re General Teamsters</u>, 265 F.3d 869, 877 (9th Cir. 2001) (citing <u>In re Capital West</u>

9

<u>Investors</u>, 186 B.R. 497, 499 (N.D. Cal. 1995)).

However, the Debtors' Plan fails to include a mechanism that would preserve value for creditors and interest holders in the event that the FAIR Act is enacted within a limited, reasonable period following the Plan's effective date. By contrast, other Chapter 11 debtors facing large asbestos-related liabilities have incorporated just such a mechanism in their reorganization plans. <u>See</u> <u>In re The Babcock & Wilcox Co., et al.</u>, No. 00-10992 (Bankr. E.D. La.) (confirmed reorganization plan); <u>In re USG Corp. <i>et al.</i></u>, Case No. 01-2094 (JKF) (Bankr. D. Del.) (proposed reorganization plan). <u>See</u> <i>Ad Hoc</i> Committee Objection at 3; Transcript at 40.

If enacted, the FAIR Act would channel all of the Debtors' asbestos liabilities to a federally-run trust fund. Pursuant to the FAIR Act, the reorganized Debtors would be required to pay to the fund on an annual basis approximately $80 million, which contributions have been estimated to have a (conservatively measured) net present value of approximately $1 billion. <u>See</u> Bondholder Objection at 7. Therefore, the FAIR Act would reduce the Debtors' asbestos-related liabilities from over $10 billion, as estimated under the Plan, to $1 billion (or even less). As result, hundreds of millions of dollars of value that would otherwise be funneled to the asbestos claimants would instead be available to pay other constituents, including the preferred and equity security holders. But by failing to include a straight-forward and fair Babcock & Wilcox/USG-type mechanism to account for the FAIR Act, the Plan would effectively award to the asbestos claimants billions of dollars of estate value that would otherwise be made available to all estate constituents upon enactment of the FAIR Act. <u>See</u> Transcript at 40-44.

Nonetheless, despite the fact that the Debtors' Plan fails to maximize estate value for all constituents, the Bankruptcy Court found that the Debtors had proposed their Plan in good faith and was "facially….confirmable." <u>See</u> Transcript at 45. This is further clear, reversible error.

Likewise, the Debtors failed to maximize estate value by premising their Plan on the Estimation Order (which estimated Owens Corning's asbestos-related liabilities at $7 billion), without accounting for the possible reversal on appeal of the Estimation Order either before or after the Plan's effective date.  The Estimation Order is now the subject of a heavily contested appeal before the Third Circuit.  If the Plan becomes effective before a Third Circuit decision on the appeal of the Estimation Order, such that the distributions to the asbestos trusts established under the Plan are made, the appeal may be rendered moot, thereby depriving the Debtors' non-asbestos claimants and interest holders of billions of dollars of additional estate value.  See Transcript at 58, 62-63.  Here too, the Bankruptcy Court's finding that the Debtors had proposed their Plan in good faith and that the Plan is facially confirmable is at variance with the record and is clear, reversible error.

Finally, as further evidence of the absence of good faith, the Debtors' directors and officers do not have the legal authority to propose the Plan or seek its confirmation in light of Owens Corning's admitted failure to abide by its obligations under Delaware law (and its own organizational documents) to hold annual shareholder elections for the past five years as required by Del. Code Ann. Tit. 8, § 211(b).  The failure by Owens Corning to conduct an annual shareholders' meeting is an actionable offense under Delaware law, entitling shareholders to commence a lawsuit against Owens Corning in the Delaware Chancery Court.  See Del. Code Ann. Tit. 8, § 211(c) ("If there be a failure to hold the annual meeting … for a period of 13 months … after its last annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder.")  Consequently, none of Owens Corning's current purported directors (who are supposed to hold office, on a staggered basis, for three year terms only) validly hold their board seats.  Nonetheless, these same illegitimate directors (and the

officers that serve them) are seeking confirmation of the Plan, which fails to maximize estate value as described above.  See Shareholder Meeting Motion at 5-9, 16-19.

The Bankruptcy Court's findings that the Debtors had proposed their Plan in good faith and were not using their exclusivity to prejudice parties-in-interest did not comport with the facts on the record before it.  To the contrary, the Debtors have used their exclusivity to prevent alternative plans from being proposed that would maximize value for all constituencies and have forced upon the *Ad Hoc* Committee and all shareholders a Plan that wipes them out.  "[P]lan exclusivity provisions should not be employed as a tactical device to put pressure on parties to yield to a plan they consider unsatisfactory."  Geriatrics Nursing, 187 B.R. at 132 (citing In re Texaco, Inc., 81 B.R. 806, 812 (Bankr. S.D.N.Y. 1988).  Accordingly, the Bankruptcy Court's conclusion that cause existed to extend the Debtors' exclusivity until July 31, 2006 was clear reversible error, made all the more apparent by the fact that the Debtors had a very heavy burden to establish such cause in seeking an eleventh extension to their exclusive periods.

## CONCLUSION

For the reasons stated herein, the Court should reverse the Exclusivity Order and remand this matter to the Bankruptcy Court.

Dated: April 3, 2006                    Respectfully submitted,

                                        **CONNOLLY BOVE LODGE & HUTZ LLP**


                                        **/s/ Marc J. Phillips**_____
                                        Jeffrey C. Wisler (No. 2795)
                                        Christina M. Thompson (No. 3976)
                                        Marc J. Phillips (No. 4445)
                                        The Nemours Building
                                        1007 N. Orange Street
                                        P.O. Box 2207
                                        Wilmington, Delaware 19899
                                        (302) 685-9141
                                        jwisler@cblh.com
                                        cthompson@cblh.com
                                        mphillips@cblh.com

                                        - and -

                                        **BROWN RUDNICK BERLACK ISRAELS LLP**
                                        Edward S. Weisfelner, Esq.
                                        Robert J. Stark, Esq.
                                        Seven Times Square
                                        New York, New York 10036
                                        (212) 209-4800

                                        -and-

                                        Anthony L. Gray, Esq.
                                        John C. Elstad, Esq.
                                        One Financial Center
                                        Boston, Massachusetts 02111
                                        (617) 856-8200

                                        **CO-COUNSEL TO THE *AD HOC* COMMITTEE**

# 456675v1

# UNREPORTED OPINIONS

LEXSEE 2001 US DIST LEXIS 9660

## IN RE THE BABCOCK & WILCOX CO., ET AL.

### CIVIL ACTION NO: 01–1467

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

*2001 U.S. Dist. LEXIS 9660*

**June 25, 2001, Decided**
**June 26, 2001, Filed; June 26, 2001, Entered**

**PRIOR HISTORY:** [*1]  Bankruptcy Case No. 00–10992 through 00–10995. Adversary Proceeding No. 01–1155 SECTION: "R" (5).

**DISPOSITION:** ACC's motion to withdraw reference from bankruptcy court DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The debtor filed an adversary proceeding seeking declarations that, in effect, would affirm several transfers the movant committee alleged were fraudulent. The transfers were made to defendant parent company and included transfers of all stock the debtor held in three subsidiaries, also defendants. The committee intervened in that proceeding, sought a jury trial, and moved to withdraw the reference of the proceeding to annul the transfers.

**OVERVIEW:** The committee's members all had products liability claims against the debtor. The bankruptcy estate included a trust fund from which the member's claims would be paid. Thus, the committee sought to recover for the estate $622,000,000 or more in assets the debtor transferred to the parent company. The court concluded that the committee could act on behalf of the estate: rather than seeking to annul the transfers, as demanded by the committee, the debtor sought to confirm them; thus, the debtor was not acting in the interest of the bankruptcy estate. However, the court denied the committee's motion for withdrawal of the reference. The committee's claims were equitable, as were the remedies they sought; thus, the committee/estate was not entitled to a jury trial. Further, a fraudulent conveyance action was a core proceeding and was the stock-in-trade of the bankruptcy court.

**OUTCOME:** The court denied the committee's motion to withdraw the reference from the bankruptcy court.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN1] The standard for when a district court may withdraw the reference from a bankruptcy court is outlined in *28 U.S.C.S. § 157*(d). Section 157(d) provides for both mandatory and permissive withdrawal.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN2] See *28 U.S.C.S. § 157*(d).

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN3] Courts generally interpret *28 U.S.C.S. § 157*(d) restrictively, granting mandatory withdrawal of the reference from the bankruptcy court when the claim and defense entail material and substantial consideration of non-Bankruptcy Code federal law.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN4] The United States Court of Appeals for the Fifth Circuit holds that in determining whether to withdraw the reference from the bankruptcy court for cause shown, district courts should consider whether the matter at issue is a core or a non-core proceeding. Additionally, courts should consider whether the proceedings involve a jury demand and whether withdrawal would further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN5] There is no question that a fraudulent conveyance action is a core proceeding. Bankruptcy Code

2001 U.S. Dist. LEXIS 9660, *1

§ 157(b)(2)(H) specifically provides that core proceedings include proceedings to determine, avoid or recover fraudulent conveyances. *28 U.S.C.S. § 157(b)(2)(H)*.

**Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers**

[HN6] *Bankruptcy Code § 544(b)(1)* grants the trustee power to avoid a transfer by the debtor that is voidable under applicable law: The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under *11 U.S.C.S. § 502* or that is not allowable under § 502(e). *11 U.S.C.S. § 544(b)(1)*. Nevertheless, the United States Court of Appeals for the Fifth Circuit recognizes that in appropriate cases, a creditors' committee has standing to file suit on behalf of a debtor-in-possession or a trustee. Specifically, the circuit court holds that a creditor has standing to bring suit in place of the debtor-in-possession when: (1) the claim in question is colorable; (2) the debtor unjustifiably refused to pursue it; and (3) the creditor obtains leave of the court prior to instituting suit.

**Bankruptcy Law > Debtor Benefits, Duties & Eligibility > Duties**

[HN7] A debtor corporation is duty bound to maximize the value of the bankruptcy estate, not to advance the separate business interests of its parent.

**Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers**

[HN8] The United States Court of Appeals for the Fifth Circuit holds that the test for unjustified refusal of a debtor to seek to avoid a transfer is whether the interests of creditors were left unprotected.

**Civil Procedure > Jury Trials > Right to Jury Trial**

[HN9] The United States Supreme Court has set out a three-part test to determine whether a party is entitled to a jury trial. First, courts must determine if the action is of the type that would have been brought at law in eighteenth century England before the merger of law and equity. Next, courts examine the remedy sought and determine whether it is legal or equitable in nature. The inquiry into the nature of the remedy is more important than the analysis of the nature of the claim. If, on balance, these two factors indicate that a jury trial is called for under the Seventh Amendment, the court must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

**Civil Procedure > Jury Trials > Right to Jury Trial**

**Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers**

[HN10] Regarding the right to a jury trial, the United States Supreme Court distinguishes actions to recover fraudulent transfers of tangible property from those to recover intangible property. If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee today as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute. Thus, whether an action for fraudulent conveyance requires a jury trial depends upon the subject matter of the action.

**Bankruptcy Law > Estate Property**

**Real & Personal Property Law > Personal Property**

[HN11] An intangible is defined as such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as a certificate of stock.

**Civil Procedure > Jury Trials > Right to Jury Trial**

**Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers**

[HN12] A creditors' fraudulent conveyance action is equitable where its subject matter is shares of stock, an intangible.

**Bankruptcy Law > Estate Property**

**Real & Personal Property Law > Personal Property**

[HN13] Corporate stock and promissory notes are intangibles.

**Civil Procedure > Jury Trials > Right to Jury Trial**

[HN14] Rescission is equitable in nature and no right to a jury attaches to such actions.

**Civil Procedure > Jury Trials > Right to Jury Trial**

[HN15] In an action seeking avoidance of stock transfers, there is no right to a jury trial.

**Civil Procedure > Jury Trials > Right to Jury Trial**

**Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers**

[HN16] There is no jury trial right when a bankruptcy trustee seeks to avoid a conveyance and reconvey property or alternatively to order the debtor to pay damages.

**Civil Procedure > Jury Trials > Right to Jury Trial**

[HN17] The United States Supreme Court rejects the view

2001 U.S. Dist. LEXIS 9660, *1

that the right to trial by jury may be lost as to legal issues where those issues are "incidental" to equitable issues. However that statement applies to a claim to which a jury trial right traditionally applied and does not refer to mere alternative prayers for relief arising from a wholly equitable framework. The United States Court of Appeals for the Fifth Circuit recognizes that there may be situations in which awards of monetary relief are equitable remedies.

***Civil Procedure > Jury Trials > Right to Jury Trial***
***Bankruptcy Law > Examiners & Trustees > Fraudulent***
***Transfers***
[HN18] There is no jury trial right when the creditor against whom a fraudulent conveyance claim is asserted has filed a claim against the bankruptcy estate.

**COUNSEL:** For BABCOCK & WILCOX COMPANY, THE, plaintiff: Jan Marie Hayden, William H. Patrick, III, Tristan Manthey, Heller, Draper, Hayden, Patrick & Horn, LLC, New Orleans, LA.

For BABCOCK & WILCOX INVESTMENT COMPANY, defendant: Joseph W. Looney, Adams & Reese, New Orleans, LA.

For BABCOCK & WILCOX INVESTMENT COMPANY, MCDERMOTT INCORPORATED, BWX TECHNOLOGIES INC, HUDSON PRODUCTS CORPORATION, MCDERMOTT TECHNOLOGY, INC., defendants: Vincent E. Lazar, Daniel R. Murray, Barry Sullivan, Joel J. Africk, Daniel F. Lynch, Stephen L. Wood, Jenner & Block, Chicago, IL.

For MCDERMOTT INCORPORATED, BWX TECHNOLOGIES INC, HUDSON PRODUCTS CORPORATION, MCDERMOTT TECHNOLOGY, INC., BABCOCK & WILCOX TRACY POWER INC., defendants: John Michael Duck, Joseph W. Looney, Adams & Reese, New Orleans, LA.

For ASBESTOS CLAIMANTS' COMMITTEE, movant: James Patrick Magee, Monica Tufano Surprenant, Dennis Martin Laborde, Baldwin & Haspel, LLC, New Orleans, LA.

For ERIC D GREEN: J. David Forsyth, Melissa M. Savoie, Sessions, Fishman [*2] & Nathan, LLP, New Orleans, LA.

**JUDGES:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** SARAH S. VANCE

**OPINION:**

**ORDER AND REASONS**

Before the Court is the motion by the Asbestos Claimants Committee to withdraw the reference of a certain adversary proceeding pursuant to *28 U.S.C. § 157*(d). For the following reasons, the motion is DENIED.

**I. BACKGROUND**

This motion to withdraw the reference involves a fraudulent conveyance action by the Asbestos Claimants Committee challenging five transactions in which the Debtor (B&W) transferred assets to its parent Babcock & Wilcox Investment Company (BWICO) on or after July 1, 1998. In the first transfer, the Debtor distributed to BWICO a non-interest bearing promissory note due to the Debtor from BWICO. In the second transfer, the Debtor distributed one hundred percent of the stock of its subsidiary Babcock & Wilcox Tracy Power, Inc. to BWICO. In the three remaining transfers, the Debtor distributed one hundred percent of the stock of three operating subsidiaries, McDermott Technology, Inc., Hudson Products Corporation, and BWX Technologies, Inc. to BWICO. The ACC claims that it first learned of these transfers [*3] in July of 2000. The ACC also asserts that although the effect of the transfers on the Debtor's financial statements was a reduction of Debtor's assets by approximately $622 million, the true value of the assets may be considerably greater.

On November 13, 2000, the ACC made a formal demand on the Debtor either to obtain a voluntary return of the assets to the Debtor's estate or to institute an adversary proceeding seeking such a retransfer. (See ACC's Mem. Supp. Mot. to Withdraw Reference Ex. A.) The Debtor promised to investigate the transfers and claimed that it was not necessary to file an adversary proceeding at that time. (See id.) The ACC responded on April 21, 2001 with a final demand upon the Debtor to institute legal action immediately with regard to the five transfers or the ACC would seek to bring the action on behalf of the Debtor's estate.

On April 30, 2001, B&W responded by instituting an adversary proceeding in bankruptcy court for the Eastern District of Louisiana against defendants, BWICO, BWX Technologies, Inc., Babcock & Wilcox Tracy Power, Inc., Hudson Products Corporation, and McDermott Technology, Inc. The proceeding was in the form of a declaratory [*4] judgment action seeking a declaration that Louisiana law applies to the case, a determination that the Debtor was solvent at the time of the 1998 transfers, and a determination that the transfers are not voidable. On May 14, 2001, the ACC asked the

bankruptcy court for leave to intervene in the adversary proceeding and for authority to assert on behalf of the Debtor's estate an action to annul the allegedly fraudulent transfers and to return the transferred property to the Debtor's estate. The complaint in intervention included a jury demand. At the same time, the ACC moved to withdraw the reference on the proceeding to annul the transfers.

Before the motion to withdraw the reference could be heard in this Court, the bankruptcy court granted the ACC's motion to intervene to assert the revocatory claim, except that the Court directed the ACC to delete McDermott International as a defendant. The bankruptcy court did not explicitly rule that the ACC stood in the shoes of the Debtor in asserting this action, leaving some confusion as to the status of the ACC's revocatory action and the Debtor's declaratory action. The bankruptcy court then established a very aggressive schedule to resolve [*5] the choice-of-law issue and the issue of whether the debtor was solvent at the time of transfers. In the meantime, this Court held a hearing on the motion to withdraw the reference. Resolution of this motion boils down to whether the ACC is entitled to a jury trial on the fraudulent conveyance claim. Because, after careful study, the Court has determined that Seventh Amendment jury trial rights are not implicated here, the motion to withdraw the reference is denied.

## II. DISCUSSION

### A. Withdrawal of the Reference

[HN1] The standard for when a district court may withdraw the reference from a bankruptcy court is outlined in Title *28, United States Code, Section 157*(d). Section 157(d) provides for both mandatory and permissive withdrawal:

> [HN2]
> The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations [*6] or other activities affecting interstate commerce.

*28 U.S.C § 157*(d).

[HN3] Courts generally interpret this provision restrictively, granting mandatory withdrawal of the reference when the claim and defense entail material and substantial consideration of non-Bankruptcy Code federal law. *See, e.g., Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc., 161 B.R. 21, 24 (E.D. La. 1993)* (withdrawing reference when case necessarily involved a determination of antitrust claims); *U.S. Gypsum Co. v. Nat'l Gypsum Co., 145 B.R. 539, 541 (N.D. Tex. 1992)* (withdrawing reference when case necessarily involved a determination of patent claims); *In re Johns Manville Corp., 63 B.R. 600, 603 (S.D.N.Y. 1986)* (withdrawing reference when case necessarily involved a determination of Comprehensive Environmental Response Compensation and Liability Act issues); *In re White Motor Corp., 42 B.R. 693, 704 (N.D. Ohio 1984)* (no withdrawal of reference based on speculation about issues under Employee Retirement Income Security Act and Internal Revenue Code which may or may not be germane to the core proceeding). The [*7] ACC does not seek mandatory withdrawal. Rather, it seeks permissive withdrawal under *28 U.S.C. Section 157*(d) "for cause shown."

### 1. Permissive Withdrawal

[HN4] The Fifth Circuit has held that in determining whether to withdraw the reference for cause shown, district courts should consider whether the matter at issue is a core or a non-core proceeding. *See Holland America Ins. Co. v. Succession of Shepherd, J. Roy, 777 F.2d 992, 999 (5th Cir. 1985). See also In re Babcock & Wilcox Co., 2000 U.S. Dist. LEXIS 5626, 2000 WL 422372, *3 (E.D. La. April 17, 2000)*. Additionally, courts should consider whether the proceedings involve a jury demand and whether withdrawal would further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process. *See id.*

### a. Nature of Proceeding

[HN5] There is no question that a fraudulent conveyance action is a core proceeding. Section 157(b)(2)(H) of the Bankruptcy Code specifically provides that core proceedings include "proceedings to determine, avoid or recover fraudulent [*8] conveyances." *28 U.S.C. § 157*(b)(2)(H); *see Carlton v. Baww, Inc., 751 F.2d 781, 787-88 (5th Cir. 1985)* (A proceeding ... to void a fraudulent conveyance clearly 'arises under Title 11'"). Therefore, the Court finds this matter to be a core proceeding.

### b. Demand for a Jury Trial

The ACC asserts that it is entitled to a jury trial under *Granfinanciera v. Nordberg, 492 U.S. 33, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989)*, in which the Supreme Court held that a person who has not submitted a claim against a bankruptcy estate has a jury trial right under the Seventh

2001 U.S. Dist. LEXIS 9660, *8

Amendment when he is sued by a bankruptcy trustee to recover a fraudulent monetary transfer. The ACC further asserts that the inability of the bankruptcy court to hold a jury trial is a ground for a district court to withdraw the reference from a bankruptcy court. *See* 1 *COLLIER ON BANKRUPTCY* § 3.04 [1][b] (15th ed. 1992). Debtor and defendants argue that the ACC is not entitled to a jury trial based on three contentions: (1) the ACC is not the proper party to assert the right to a trial by jury; (2) the claim brought by ACC is equitable in nature; and (3) [*9] the ACC has submitted its claim to the equity jurisdiction of the bankruptcy court thereby converting the action to an equitable proceeding.

**1) The Posture of the ACC**

First, Debtor argues that under bankruptcy law, the fraudulent conveyance claim belongs to the debtor-in-possession, which has the same powers as a bankruptcy trustee. *See* 11 *U.S.C.* § 1107(a)("a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter."); *In re CompuAdd Corp.*, 137 F.3d 880, 882–83 (5th Cir. 1998). [HN6] *Section 544(b)(1) of the Bankruptcy Code* grants the trustee power to avoid a transfer by the debtor that is voidable under applicable law:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable under section 502(e) of this title.

*11 U.S.C.* § 544(b)(1). Nevertheless, the Fifth Circuit has recognized that [*10] in appropriate cases, a creditors' committee has standing to file suit on behalf of a debtor-in-possession or a trustee. Specifically, the Fifth Circuit has held that a creditor has standing to bring suit in place of the debtor-in-possession when: (1) the claim in question is colorable; (2) the debtor unjustifiably refused to pursue it; and (3) the creditor obtains leave of the court prior to instituting suit. *See Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988); *see also In re Mortgage America*, 831 F.2d 97, 98 (5th Cir. 1987) (creditors' committee may, in some circumstances, have right to initiate avoidance action).

n1 Defendants argue that the Supreme Court's recent decision in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000), does not bode well

for the ACC's authority to assert a fraudulent conveyance claim on behalf of the debtor's estate and calls *Louisiana World Exposition* into question. The Court disagrees. *Hartford Underwriters* held that the Bankruptcy Code does not provide an administrative claimant an *independent* right to recover the costs of preserving collateral of the debtor's estate under *11 U.S.C.* § 506(c). The Court found that the statute authorized only a trustee to recover such costs. The Court specifically noted that it did not address the validity of the practice of allowing other interested parties to act in the trustee's place when the trustee refuses to bring an action the Code authorizes only the trustee to bring. The Court said that *Hartford* was not analogous because there the petitioner did not ask the trustee to pursue payment and did not seek permission from the bankruptcy court to assert the action in the trustee's place. *See id. at 13 n.5, 120 S. Ct. 1951 n.5.*

[*11]

Here, the parties dispute whether the bankruptcy court allowed the ACC to proceed on behalf of the estate in this action. Since the bankruptcy court allowed the ACC to file a complaint-in-intervention as the "plaintiff-intervener," and the complaint asserts a revocatory action, a claim that belongs to the estate, it would appear that the bankruptcy court intended to allow the ACC to proceed in place of the debtor-in-possession. In any event, the Court believes that the *Louisiana World Exposition* factors are clearly satisfied in this case. As pled, the claim is colorable. Further, in November 2000 and April 2001, counsel for the ACC demanded that the Debtor obtain the return of the assets in issue or institute legal action to obtain their recovery. (*See* ACC's Mem. Supp. Mot. to Withdraw Reference Exs. A & C). In response, the Debtor did not file a revocatory action to secure the return of the assets but instead filed the opposite, an action seeking a declaration of the Debtor's solvency and that the transfers were not voidable. The Court finds that the Debtor's action constitutes an unjustifiable refusal to seek the relief demanded. Further, the Court finds Debtor's arguments [*12] that it used its business judgment in deciding to proceed as it did totally unpersuasive. The Debtor has no incentive to avoid the transfers it made itself to its parent company; nor is it interested in probing the issue of its solvency in 1998. Further, its argument that its declaratory action is somehow better for the estate than a "full blown" avoidance action falls flat. The Court fails to see how the ACC's revocatory claim would be any more time consuming or costly, and, if successful, it would significantly enlarge the estate. Further, Debtors threat that its affiliates may cut off financial support if the ACC sues to revoke the

2001 U.S. Dist. LEXIS 9660, *12

transfers is just that. If the affiliates' continued support is predicated on the Debtor's protection of them in a friend-of-the-family suit, then this only highlights the reason that the creditors should bring the action. In addition, the Debtor fails to explain how the ACC's suit would harm its parent's relationship with the U.S. Navy, while its own declaratory action would not, unless it knows in advance that it will be declared to have been solvent in 1998. In any event, [HN7] the debtor is duty bound to maximize the value of the estate, not to advance [*13] the separate business interests of its parent. Finally, debtor's argument that the transfers may not have any real value is undermined by the extent of the resistance to returning them.

In *Louisiana World Exposition*, [HN8] the Fifth Circuit said that the test for unjustified refusal is whether "the interests of creditors were left unprotected." *Louisiana World Exposition, 858 F.2d at 252 n.20*. Since the debtor's suit was designed to thwart a revocatory claim rather than to assert one, and the cause of action could be worth $622 million or more to the estate, the Court finds the debtor's refusal to assert it unjustified. Hence, the ACC is entitled to assert a revocatory action on behalf of the debtor's estate, and the Court rejects debtor's assertion that the ACC is not entitled to assert whatever jury trial rights attach to this claim.

### 2) Legal v. Equitable Proceeding

The debtor's next contention is that regardless of who asserts the fraudulent conveyance claim, it is equitable in nature and not subject to a jury trial. In *Granfinanciera v. Nordberg, 492 U.S. 33, 42, 109 S. Ct. 2782, 2790, 106 L. Ed. 2d 26 (1989)*, [HN9] the United States Supreme [*14] Court set out a three-part test to determine whether a party is entitled to a jury trial. First, courts must determine if the action is of the type that would have been brought at law in eighteenth century England before the merger of law and equity. *See id.* Next, courts examine the remedy sought and determine whether it is legal or equitable in nature. *See id.* The inquiry into the nature of the remedy is more important than the analysis of the nature of the claim. *Id.* If, on balance, these two factors indicate that a jury trial is called for under the Seventh Amendment, the court must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder. *See id.*

*Granfinanciera* dealt with a fraudulent conveyance claim involving transfers of specific and determinate amounts of money. The Court found that such an action would have been an action at law in eighteenth century England. *See id.* Notably, [HN10] the Court distinguished actions to recover fraudulent transfers of tangible property from those to recover intangible property: [*15]

> If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee today as they were in the English courts of long ago. *If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.*

*Id. at 44, 109 S. Ct. at 2791.* (citing 1 G. GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES § 98, pp. 183–184 (rev. ed. 1940)) (*emphasis added*). Thus, whether an action for fraudulent conveyance requires a jury trial depends upon the subject matter of the action. *See In re Term Industries, Inc., 181 B.R. 31, 32 (Bankr. S.D.N.Y. 1995).* [HN11] An intangible is defined as "such property as has no intrinsic or marketable value, but is merely the representative or evidence of value, such as a certificate of stock." *Id. at 33* (quoting BLACK'S LAW DICTIONARY (6th ed. 1991)). In [*16] *In re Term Industries*, the court found that [HN12] a creditors' fraudulent conveyance action was equitable because "its subject matter [was] shares of stock, an intangible." *See id. at 33; see also Bennett v. Genoa AG Center, Inc., 154 B.R. 126, 136 (Bankr. N.D.N.Y 1992)* (no right to jury when relief sought was the recission of foreclosure sale and reconveyance of property); *In re Stocks, 137 B.R. 516, 522 (Bankr. N.D. Fl. 1991)* (action was equitable when court was asked to determine whether forty percent of the interest in plaintiff was property of the bankruptcy estate and to void the transfer of interest from plaintiff).

The ACC seeks to avoid the transfer of assets that are intangible in nature. The assets at issue are the stock of B&W's former subsidiaries (BWX Technologies, Hudson Products Corporation, McDermott Technologies, Inc. and B&W Tracy Power) and a promissory note from BWICO. [HN13] Stock and notes are intangibles. Hence, this is the type of fraudulent conveyance action that would have required a court of equity in eighteenth century England.

Further, the relief sought is equitable. The ACC seeks an order returning intangible [*17] assets. (*See* ACC's Mem. Supp. Mot. to Withdraw Reference Ex. A.) In seeking to have the Court order BWICO to divest itself of the stock of the former B&W operating subsidiaries and of the note, the ACC seeks relief in the nature of recission

and/or divestiture, both of which are equitable remedies. *See United States v. DuPont de Nemours Co., 366 U.S. 316, 326, 81 S. Ct. 1243, 1250, 6 L. Ed. 2d 318 (1961)* ("Divestiture itself is an equitable remedy."); *Kline Hotel Partners v. Aircoa Equity Interests, Inc., 729 F. Supp. 740, 744 (D. Col. 1990) (citing Pioneer Prop., Inc. v. Martin, 776 F.2d 888, 892 (10th Cir. 1985); Rachbach v. Cogswell, 547 F.2d 502, 505 (10th Cir. 1976); Royal Am. Managers, Inc. v. I.R.C. Holding Corp., 885 F.2d 1011, 1019 n.4 (2d Cir. 1989); Arber v. Essex Wire Corp., 490 F.2d 414, 421 (6th Cir.), cert. denied, 419 U.S. 830, 95 S. Ct. 53, 42 L. Ed. 2d 56 (1974); Dollar Sys., Inc. v. Avcar Leasing Sys. Inc., 890 F.2d 165 (9th Cir. 1989))* (recognizing that [HN14] rescission is equitable in nature and no right to a jury attaches to such [*18] actions); *see also In re Term Industries, 181 B.R. at 33* ([HN15] action seeking avoidance of stock transfers; no jury trial). Further, the ACC's request for alternative monetary relief in an amount equal to the value of the assets does not convert the claim to one in law. *See Resolution Trust Co. v. Pasquariello, 16 F.3d 525, 528–30 (3d Cir. 1994)* (refusing mandamus on denial of jury trial when plaintiffs sought to recover real property or, alternatively, the value of the property); *see also Whitlock v. Hause, 694 F.2d 861, 865 (1st Cir. 1982)* (finding [HN16] no jury trial right when trustee sought to avoid conveyance and reconvey property or alternatively to order debtor to pay damages). Unlike *Granfinanciera*, this case does not involve a determinate sum of money, and the ACC concedes that it does not know the value of the intangible assets. As in *Whitlock v. Hause, 694 F.2d 861 (1st Cir. 1982)*, in which the First Circuit found no jury trial right, the ACC's claim is for the assets themselves, and its request for their monetary value would "take effect only if the earlier requested equitable relief of reconveyance was unavailable. [*19] " *Whitlock, 694 F.2d at 865.* The Court in *Whitlock* acknowledged that [HN17] the Supreme Court in *Dairy Queen v. Wood, 369 U.S. 469, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962)*, rejected the view that "the right to trial by jury may be lost as to legal issues where those issues are 'incidental' to equitable issues." *694 F.2d at 866.* But the *Whitlock* court noted that the *Dairy Queen* statement applied to a claim to which a jury trial right traditionally applied and did not refer to mere alternative prayers for relief arising from a wholly equitable framework. *See id.* Further, the Fifth Circuit has recognized that there may be situations in which awards of monetary relief are equitable remedies. *See In re Jensen, 946 F.2d 369, 372 (5th Cir. 1991).* Finally, in *Granfinanciera*, the Supreme Court stated that courts were to determine whether "on balance" the nature of the claim and the nature of the relief sought pointed to a jury trial. On balance, this Court finds that these factors do not indicate that jury trial rights are implicated here.

### 3) Waiver of Jury Trial Right or Conversion of the Claim

Lastly, the debtor and defendants [*20] argue that even if the ACC were entitled to a jury trial on the fraudulent transfer claim, it submitted to the equitable jurisdiction of the bankruptcy court by filing claims against the estate in the bankruptcy. n2

> n2 The debtor and defendants also argue that the ACC waived its jury trial right by filing an intervention in the adversary proceeding before the bankruptcy court, rather than filing a lawsuit of its own in state court or in district court. The Court finds this waiver argument unpersuasive. The ACC simultaneously filed a motion to withdraw the reference on its complaint-in-intervention, which asserted a jury demand. This conduct did not amount to a waiver.

The Court finds that in the peculiar posture of this case, the ACC has submitted to the equity jurisdiction of the bankruptcy court and that the claim is integral to the restructuring of debtor-creditor relations. The context of this case is totally different from *Granfinanciera*, on which the ACC relies. *Granfinanciera* involved a fraudulent [*21] conveyance action by a bankruptcy trustee against a third party which had not asserted a claim against the debtor's estate. At the time the action was brought, the debtor's plan of reorganization had already been approved by the bankruptcy court. As part of the plan, the trustee was vested with authority to pursue causes of action for fraudulent conveyances. The Court held that since the third parties had not filed claims against the estate, the trustee's fraudulent conveyance action did not arise "as part of the process of allowance and disallowance of claims," nor was it "integral to the restructuring of debtor-creditor relations." *492 U.S. at 58, 109 S. Ct. at 2799.* Indeed, the Court noted the adventitious relationship between the fraudulent conveyance action and the reorganization proceeding, pointing out that the suit had not been filed until well after the plan had been confirmed and "the debtor's assets and business had been liquidated." *Id. at 60 n.15, 109 S. Ct. at 2800 n.15.* The bankruptcy process was essentially over and done with.

The claim at issue does not fall under the *Granfinanciera* paradigm. This bankruptcy arises under a unique [*22] Bankruptcy Code provision that, upon confirmation of a plan, permits the Debtor to obtain an injunction channeling present and future asbestos claims to a trust and enjoining litigation of claims to be paid by the trust. *See 11 U.S.C. § 524(g).* The creditors who are asserting the fraudulent conveyance claim on behalf

of the estate have filed thousands and will file thousands more asbestos-related claims against the Debtor's estate. *Cf. Langenkamp v. Culp, 498 U.S. 42, 112 L. Ed. 2d 343, 111 S. Ct. 330 (1990)* ([HN18] no jury trial right when creditor against whom fraudulent conveyance claim is asserted has filed a claim against the estate). Further, this dispute is not adventitious to the reorganization. There is no confirmed plan of reorganization yet, and there likely will not be one until this issue is resolved. Moreover, the real conflict in the fraudulent conveyance action is between the ACC and the debtor and its affiliates, and it essentially involves how much money will be available to fund the trust. The debtor-in-possession does not want the assets in issue returned to the estate and subjected to the asbestos claims. Unlike *Granfinanciera,* [*23] this issue is integral to the restructuring of debtor-creditor relations. Furthermore, the key issue in the fraudulent conveyance action, whether B&W was insolvent at the time of the transfers, involves valuing all of the then-asserted, as well as the future, asbestos personal injury claims. This same issue, *i.e.,* the estimated value of the asbestos claims, is critical to the reorganization proceeding, albeit as of a later date. Indeed, the method by which the claims are valued is one of the most contentious issues in the reorganization. This Court therefore finds that the ACC submitted itself to the equitable jurisdiction of the bankruptcy court because it represents claimants against the estate. The Court further finds that the issues in the fraudulent conveyance action are integral to the restructuring of debtor-creditor relations. The Court further finds that debtor's affiliates have submitted themselves to the equitable jurisdiction of the bankruptcy court because the bankruptcy court granted them the benefit of the automatic stay, and they may be entitled to benefit from an injunction against future asbestos litigation if a plan is confirmed.

Finally, *In re Jensen,* [*24] relied on by the ACC, is no obstacle to the Court's conclusion that a jury trial is not called for here. *Jensen* did not involve an ongoing reorganization but arose in the context of a confirmed and consummated plan of reorganization. The plan gave the debtor-in-possession authority to prosecute existing claims of the estate. The debtors sued third parties in state court on various tort theories. The Fifth Circuit held that the debtors had a right to a jury trial on the state law claims. In that case, the debtor's claims were clearly adventitious to the reorganization, because a plan had already been confirmed and consummated. In contrast to the ACC's claim, the dispute was not between creditors and the debtor and its affiliates over how much money the creditors would get to divide up. It therefore was not integral to the restructuring of debtor-creditor relations. *Jensen* simply involved a suit on a prepetition tort claim against a third party who was not a creditor of the estate.

### 4) Other Factors

The Court finds that withdrawal of the reference would not further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering [*25] economical use of debtor's resources and expediting the bankruptcy process. This fraudulent conveyance action is the stock-in-trade of the bankruptcy court, which is intimately familiar with issues involved in this complex bankruptcy. The bankruptcy court has put the case on a schedule to resolve the issue expeditiously. Withdrawal of the reference is simply not warranted here.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES ACC's motion to withdraw the reference from the bankruptcy court.

New Orleans, Louisiana, this 25 day of June, 2001.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

LEXSEE 2004 US DIST LEXIS 19796

**IN RE: MIRANT CORPORATION, ET AL., Debtors. THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF MIRANT AMERICAS
GENERATION, L.L.C., Appellant, VS. MIRANT CORPORATION, ET AL.,
Appellees. IN RE: MIRANT CORPORATION, ET AL., Debtors. M. H. DAVIDSON
& COMPANY, Appellant, VS. MIRANT CORPORATION, ET AL., Appellees.**

**NO. 4-04-CV-476-A, NO. 4-04-CV-530-A**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
TEXAS, FORT WORTH DIVISION**

*2004 U.S. Dist. LEXIS 19796; 52 Collier Bankr. Cas. 2d (MB) 1774*

**September 30, 2004, Decided
September 30, 2004, Filed**

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The United States
Bankruptcy Court for the Northern District of Texas,
Fort Worth Division, granted appellee debtors' motion to
extend the exclusivity period during which debtors could
propose, and seek approval of, a plan of organization.
This was debtors' second successful motion to extend the
exclusivity period under 11 U.S.C.S. § 1121.
Appellants, the official committee of unsecured creditors
(committee), challenged the ruling.

**OVERVIEW:** The bankruptcy court did not err in
granting the second extension of the exclusivity period. It
properly recognized that debtors bore the burden of
proving their entitlement to an extension of the
exclusivity period. It took account the various factors
traditionally considered in assessing a motion for
extension. It did not grant the time extension sought by
debtors. Nor did it follow the suggestion of the
committee that a sixty-day extension be granted. Instead,
it granted an extension that it concluded would be
meaningful in that debtors would be pressed, but not
unduly so, to submit a proposed plan without the
disruption of having to return to the bankruptcy court to
seek further extensions in the interim. The bankruptcy
court made it clear that further extension of the
exclusivity period would be difficult to obtain and that it
would not hesitate to act if presented evidence that
debtors were abusing the privileges extended to them. It
legitimately took into account that a meaningful
reorganization of debtors could not be accomplished on a

piecemeal basis. Its concern that debtors needed more
time to present a single plan, or at least larger plans, had
basis in the record.

**OUTCOME:** The court affirmed the bankruptcy court's
order extending the exclusivity period.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Practice & Proceedings > Appeals
Civil Procedure > Appeals > Standards of Review >
Standards Generally*
[HN1] To the extent an appeal presents questions of law,
the bankruptcy court's judgment is subject to de novo
review. Findings of fact, however, will not be set aside
unless clearly erroneous. *Fed. R. Bankr. P. 8013.* A
finding is clearly erroneous, although there is evidence to
support it, when the reviewing court on the entire
evidence is left with a definite and firm conviction that a
mistake has been committed. The mere fact that the court
would have weighed the evidence differently if sitting as
the trier of fact is not sufficient to set aside the
bankruptcy court's order if that court's account of the
evidence is plausible in light of the record viewed in its
entirety.

*Bankruptcy Law > Practice & Proceedings > Appeals
Civil Procedure > Appeals > Standards of Review > De
Novo Review*
[HN2] Allocation of the burden of proof is reviewed de
novo; the determination that a party has met its burden is
reviewed under the clearly erroneous standard.

2004 U.S. Dist. LEXIS 19796, *; 52 Collier Bankr. Cas. 2d (MB) 1774

*Bankruptcy Law > Chapter 11 (Reorganization) > Plan Process Before Confirmation > Exclusivity*
[HN3] Under 11 U.S.C.S. § 1121(d), the burden is on the debtor to show cause for extending the exclusivity period. Whether to grant a motion for extension lies within the bankruptcy court's discretion. In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization. The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts. The bankruptcy court must balance the potential harm to creditors, and limit the delay that makes creditors hostages of Chapter 11 debtors.

*Evidence > Procedural Considerations > Judicial Notice*
[HN4] A court may take judicial notice of related proceedings and records in cases before the same court.

**COUNSEL:** [*1] For Official Committee of Unsecured Creditors of Mirant Americas Generation LLC, Appellant: Thomas Rice, Cox Smith Matthews, San Antonio, TX.

For Mirant Corporation, Appellee: Robin E Phelan, Haynes & Boone, Dallas, TX.

For Dennis Michael Lynn, Bankruptcy Judge: Pro se, Fort Worth, TX.

For Case Admin Sup FW, Notice Only: Pro se, Fort Worth, TX.

**JUDGES:** JOHN McBRYDE, United States District Judge.

**OPINIONBY:** JOHN McBRYDE

**OPINION:**

MEMORANDUM OPINION and ORDER

The captioned actions come before the court as appeals from an order of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, the Honorable Dennis Michael Lynn presiding. The court, having considered the briefs of appellants, the Official Committee of Unsecured Creditors of Mirant Americas Generation, L.L.C., ("Committee") and ML H. Davidson & Co., ("Davidson"), and appellees, Mirant Corporation and other debtors whose estates are being jointly administered under Case No. 03-46590-DML-11.

pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (collectively "debtors"), the records on appeal, and applicable authorities, finds that the bankruptcy [*2] court's order should be affirmed. n1

n1 On September 16, 2004, the court ordered the parties to comment on whether the interests of Verizon Capital Corp, GE Structured Finance, Inc., and GE Asset Management, in the Mirant Corporation, et al., bankruptcy proceedings are of a nature to cause the undersigned to be obligated to recuse by reason of the undersigned's ownership of shares of common stock in Verizon Communications, Inc., and General Electric Corporation. After having studied the responses filed by the parties and pertinent legal authorities, and after having again reviewed Advisory Opinion No. 100 of the Judicial Conference Committee on Codes of Conduct, the court has concluded that recusal is not required, indeed would be inappropriate, in these appeals.

I.

Jurisdiction

The appeals are from an order entered May 10, 2004, granting an extension of the exclusivity period during which debtors may propose, and seek approval of, a plan of reorganization. This court's jurisdiction exists pursuant to [*3] *28 U.S.C. § 158(a)(2)*.

II.

Underlying Proceedings

On July 14, 2003, and various dates thereafter, Mirant Corporation and eighty-two of its direct and indirect subsidiaries filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Although the cases have not been consolidated, they are jointly administered. Debtors manage and operate their businesses as debtors-in-possession.

Pursuant to *11 U.S.C. § 1121*, debtors had a period of 120 days after the petition dates within which to file plans of reorganization and 180 days after the petition dates within which to solicit acceptances thereof (the "exclusivity period"). Prior to the expiration of the exclusivity period, debtors filed a motion seeking an extension of the period. Objections to the motion were resolved and an agreed order was entered December 9, 2003, extending the exclusivity period to file a plan to April 30, 2004, and to solicit acceptance to June 30, 2004. n2

Page 3

2004 U.S. Dist. LEXIS 19796, *; 52 Collier Bankr. Cas. 2d (MB) 1774

n2 The order provided that either or both of the Official Committee of Unsecured Creditors of Mirant Corporation and Committee could file a motion to shorten the exclusivity period if debtors failed to deliver to those committees by March 1, 2004, (1) their business plan (that had received required corporate approvals) with five-year financial projections, and (2) a report on inter-company claims and transactions, direct or indirect, between Mirant Americas Generation, L.L.C., and Mirant Corporation. And, the order required that debtors provide the committees ongoing access to, and input in, the development of a business plan, use best efforts to provide the committees with a draft qualitative business plan (without projections) by January 15, 2004, and provide each committee as promptly as reasonably possible all information and data requested by the committee relating to inter-company claims. R. (No. 4:04-CV-476-A) at 496-97.

[^4]

On April 5, 2004, debtors filed a second motion for extension of the exclusivity period. Three objections to the motion were filed, including the objections by appellants. On April 28, 2004, the bankruptcy court held a hearing on the motion. The bankruptcy court issued an oral narrative intended as a memorandum opinion. R. (No. 4:04-CV-476-A) at 893. On May 10, 2004, a written order was entered granting an extension of the exclusivity period for filing a plan until December 31, 2004, and of the time within which acceptance had to be obtained until February 28, 2005. Appellants appeal from the order.

III.

Issues on Appeal

First Issue: While using various forms of wording, both appellants complain generally that the bankruptcy court committed error by granting the second extension of the exclusivity period. n3

n3 Committee Br. at 15 & 17, Points III (the bankruptcy court's findings of fact in support of the extension of exclusivity clearly were erroneous) & IV (the bankruptcy court committed reversible error in granting the extension); Davidson Br. at 16, 25, 27, & 30, Points I (the bankruptcy court committed reversible error in granting the extension), II (the bankruptcy court erred by finding that debtors established cause for

an extension under *11 U.S.C. § 1121(d)*), III (the bankruptcy court erred by failing to require debtors to file a report or present evidence at a hearing stating reasons why a plan had not been filed and a detailed time table for the steps to be taken in order to file a plan), IV (the bankruptcy court erred by failing to require debtor Mirant Americas Generation, L.L.C., to file a report or present evidence at a hearing stating the reasons why a plan has not been filed and a detailed time table of the steps to be taken in order to file a plan), V (the bankruptcy court erred by failing to require debtor Mirant Corporation to present evidence that it had fulfilled its fiduciary duty to debtor Mirant Americas Generation, L.L.C., by considering and analyzing the possibility of a separate Mirant Americas Generation, L.L.C., plan of reorganization), & VI (the bankruptcy court's findings of fact in support of the extension of exclusivity clearly were erroneous).

[*5]

Second Issue: Another complaint common to the appellants is that the bankruptcy court erred by refusing to consider the failure of debtors to provide a duly authorized business plan by March 1, 2004, as contemplated by the bankruptcy court's prior order granting the first extension of the exclusivity period. n4

n4 Committee Br. at 22, Point V, & Davidson Br. at 31, Point VII.

Third Issue: Committee complains that the bankruptcy court improperly shifted the burden of proof under *11 U.S.C. § 1121(d)* by requiring the Official Creditors' Committees to show cause why exclusivity should be terminated. n5

n5 Committee Br. at 10, Point I.

Fourth Issue: Committee complains that the bankruptcy court made no factual findings to support its conclusions that debtors (a) have engaged in good-faith progress toward [*6] reorganization, (b) have made progress in negotiations with their creditors in the formulation of a plan of reorganization, and (c) are not seeking an extension of exclusivity in order to pressure creditors to submit to debtors' reorganization demands. n6

n6 Committee Br. at 13, Point II.

2004 U.S. Dist. LEXIS 19796, *; 52 Collier Bankr. Cas. 2d (MB) 1774

Fifth Issue: Finally, Committee complains that the bankruptcy court erred by basing its findings upon unidentified and unspecified matters that were not before the bankruptcy court at the hearing on the motion to extend exclusivity. n7

n7 Committee Br. at 23, Point VI.

IV.

Standard of Review

[HN1] To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to de novo review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.), 785 F.2d 1249, 1252 (5th Cir. 1986).* Findings [*7] of fact, however, will not be set aside unless clearly erroneous. Bankr. R. 8013; *Memphis-Shelby County Airport Authority v. Braniff Airways. Inc. (In re Braniff Airways, Inc.), 783 F.2d 1283, 1287 (5th Cir. 1986).* A finding is clearly erroneous, although there is evidence to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Id. The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985).*

[HN2] Allocation of the burden of proof is reviewed de novo; the determination that a party has met its burden is reviewed under the clearly erroneous standard. See *Stevens Shipping & Terminal Co. v. Japan Rainbow II MV, 334 F.3d 439, 443 (5th Cir. 2003).*

V.

Analysis

[HN3] Under *11 U.S.C. § 1121(d),* the burden is on the debtor to show cause for extending [*8] the exclusivity period. Whether to grant a motion for extension lies within the bankruptcy court's discretion. *In re Washington-St. Tammany Elec. Co-Op., Inc., 97 B.R. 852, 854 (E.D. La. 1989).* In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization. Id. The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts. *In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997).* The bankruptcy court must balance the potential harm to

creditors, *In re Southwest Oil Co. of Jourdanton. Inc., 84 B.R. 448, 453 (Bankr. W.D. Tex. 1987),* and limit the delay that makes creditors hostages of Chapter 11 debtors. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d 363, 372 (5th Cir. 1987).*

The court has concluded that the bankruptcy court properly applied the principles mentioned above and that, therefore, the First Issue should be resolved in favor of debtors. Here, the bankruptcy court recognized [*9] that debtors bore the burden of proving their entitlement to an extension of the exclusivity period. The bankruptcy judge took into account the various factors traditionally considered in assessing a motion for extension. R. (4:04-CV-476-A) at 893. He noted the size and complexity of the interlocking corporate structure of the debtors and the number of large contingency items that needed to be resolved or at least further clarified before a meaningful plan of reorganization can be presented.

The bankruptcy court did not grant the extension sought by debtors. Nor did the court follow the suggestion of Committee that a sixty-day extension be granted. Instead, the bankruptcy court granted an extension that it concluded would be meaningful in that debtors would be pressed, but not unduly so, to submit a proposed plan without the disruption of having to return to the court to seek further extensions in the interim. The record reflects that the bankruptcy court was not impressed by talk of "gating issues" and "visibility" or with the fact that debtors' witness could not give an assessment of the management of debtors. The indication was that the bankruptcy court would rely on the examiner, [*10] rather than debtors, to apprise the court about what needed to be done. The bankruptcy court made it clear that further extension of the exclusivity period would be difficult to obtain and that the court would not hesitate to act if presented evidence that debtors were abusing the privileges extended to them.

The bankruptcy court noted that debtors needed to be able to use the tools available under Chapter 11, and that those tools would only be available if the exclusivity period were extended. Of concern to the bankruptcy court was that debtors have an opportunity to present a single plan, or at least larger plans, that would have the potential to achieve the greatest good for everyone so that the court and the parties would not be burdened by piecemeal resolution of the individual estates. And, the bankruptcy court legitimately took into account that a meaningful reorganization of debtors could not be accomplished on a piecemeal basis. In sum. cause existed for the extension granted.

Although the bankruptcy court might not have fully articulated his findings n8 relative to the factors

2004 U.S. Dist. LEXIS 19796, *; 52 Collier Bankr. Cas. 2d (MB) 1774

traditionally considered, the explanations the bankruptcy judge gave for his ruling leave no doubt [*11] that he fully considered the relevant factors and, presumably, resolved sufficient of them in favor of debtors to justify the extension he granted. The bankruptcy judge had the discretion to grant the extension based on the evidence he heard concerning why a plan had not been filed and the expectations of debtors concerning the actions they proposed to take to file a plan. The court is satisfied that the evidence supports the express and implied findings of the bankruptcy court upon which the extension ruling was based.

   n8 This discussion applies to the Fourth Issue as well as the First.

   For reasons already stated, the bankruptcy court did not err in failing to require debtor Mirant Americas Generation, L.L.C., to separately explain why a plan had not been filed as to it or to provide a timetable of the steps to be taken for the filing of such a plan; nor does the record support a conclusion that the bankruptcy court should have required debtor. Mirant Corporation to present evidence that it had fulfilled its [*12] fiduciary duty to debtor Mirant Americas Generation, L.L.C., by considering and analyzing the possibility of a separate Mirant Americas Generation, L.L.C., plan. The bankruptcy court's concern that debtors have more time to present a single plan, or at least larger plans, has basis in the record.

   As to the Second Issue, the bankruptcy court had the discretion to evaluate the extent to which he would take into account the degree of compliance by debtors with the requirement of the prior order that debtors provide a business plan by March 1, 2004. There is nothing in the record to suggest that he abused that discretion.

   The bankruptcy court properly placed the burden on debtors to establish their entitlement to an extension of the exclusivity period. The court interprets the comments made by the bankruptcy judge when announcing his ruling to indicate that he will place on debtors the burden to show why exclusivity should not be terminated if the Creditors' Committees were to file a motion to terminate exclusivity with a viable plan or viable plans attached to the motion. R. (No. 4:04-CV-476-A) at 907-08. There is no reason to believe that, if and when the issue of terminating the extended [*13] period of the exclusivity is presented, the bankruptcy court will not properly place the burden of proof. Moreover, another reason why the Third Issue should be resolved against Committee is that a complaint at this time as to placement of burden of proof in a proceeding to be conducted in the future is premature.

   The Fifth Issue is whether the bankruptcy court erred "in considering the entire record" of the jointly administered bankruptcy cases in making its determination. Committee Br. at 25. Committee's complaint is predicated on the following exchange that occurred between the bankruptcy judge and counsel for debtors at the conclusion of the testimony of the only witness who testified at the hearing:

   THE COURT: Okay. Okay. You can step down.

   All right. Do you have any further evidence that you wish to put on, Mr. Shore?

   MR. SHORE: No. With the understanding that -- that all the pleadings that have been filed in the case are part of the record, we do not.

   THE COURT: Yes. Yes, all three -- all 4,000.

   MR. SHORE: Plus the transcripts.

   THE COURT: Plus the transcripts, the notices of appearance, all the claims too, if you'd like, all how many thousand claims, 70 -- 200 some-odd-thousand [*14] claims. This will certainly mean that putting the record for designation on appeal will take longer than exclusivity extension I could possibly award.

R. (No. 4:04-CV-476-A) at 822-23.

   [HN4] "A court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel, Ltd. v. Flintkote Co., 760 F.2d 580, 587 (5th Cir. 1985).* See also. *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.), 712 F.2d 206, 211 (5th Cir. 1983).* However, the taking of that sort of judicial notice does not mean that the bankruptcy court is treating the judicially noticed items as evidence in the proceeding before the court. As the Bankruptcy Court for the Eastern District of California explained:

   While a court may judicially notice its own records, apparently the UST operates under the mistaken notion that judicially noticing documents in the Court's file necessarily includes noticing the truth of the facts asserted in each document. . . .

   . . . Not allowing the debtor herein to present rebuttal evidence or cross-examine the witnesses making the factual

2004 U.S. Dist. LEXIS 19796, *; 52 Collier Bankr. Cas. 2d (MB) 1774

contentions asserted in the declaration in support of [*15] that motion would be violative of the fundamental concept of procedural due process. *In re Aughenbaugh, 125 F.2d 887, 889 (3rd Cir. 1942)*; see also Russell, Bankruptcy Evidence Manual, *supra*, at p. 78. . . .

*In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 782 (Bankr. E.D. Cal. 1992)*. See also. *General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1083 (7th Cir. 1997); In re Leslie, 181 B.R. 317, 322 (Bankr. N.D. Ohio 1995); In re Forster, 162 B.R. 478, 481 (Bankr. N.D. Ohio 1993)*.

In the instant case, while the record shows that the bankruptcy court made the remarks set forth above, perhaps facetiously, the record does not reflect that the bankruptcy court considered from an evidentiary standpoint anything other than the record directly related to the hearing on the motion to extend the period of exclusivity. The bankruptcy court was not asked to take judicial notice of any specific pleadings or other papers. Nor is there any indication that the bankruptcy judge took into account any particular information to which the Committee did not have an opportunity to respond. [*16] The Committee did not put on any evidence or request a continuance to enable it to prepare to present any evidence. R. (4:04-CV-476-A) at 823. The bankruptcy court's findings were stated into the record, and no party objected on the ground that the court was taking into account any matter that should not have been considered. Nor did the bankruptcy court indicate that it was taking judicial notice, except as to a particular order

that the judge said he did need to be provided as an exhibit, since he was aware of its contents. Id. at 756-57. Committee has not shown any reversible error in the manner in which the proceedings were conducted.

VI.

Order

For the reasons discussed herein, appellants have not shown that the bankruptcy court erred in any of the respects alleged by them. Accordingly,

The court ORDERS that the bankruptcy court's order from which appeals are taken be, and is hereby, affirmed.

SIGNED September 30, 2004.

JOHN McBRYDE

United States District Judge

FINAL JUDGMENT

In accordance with the court's memorandum opinion and order of even date herewith,

The court ORDERS, ADJUDGES, and DECREES that the May 10, 2004, order of the United States [*17] Bankruptcy Court for the Northern District of Texas, Fort Worth Division, granting an extension of the exclusivity period in the underlying actions be, and is hereby, affirmed.

SIGNED September 30, 2004.

JOHN McBRYDE

United States District Judge

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 3rd day of April, 2006, I electronically filed the **Appellants' Opening Brief** with the Clerk of Court using CM/ECF, and served the document as indicated upon the following counsel.

<u>**BY HAND DELIVERY**</u>

Norman L. Pernick, Esq.
J. Kate Stickles, Esq.
Saul Ewing LLP
222 Delaware Avenue
Wilmington, DE 19801

Edwin Harron, Esq.
Sean T. Greecher, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Francis A. Monaco, Jr., Esq.
Monzack & Monaco, P.A.
1201 Orange Street, Suite 400
Wilmington, DE 19801

Richard W. Riley, Esq.
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

Marla R. Eskin, Esq.
Mark T. Hurford, Esq.
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19801

David M. Klauder, Esq.
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801

William H. Sudell, Jr., Esq.
Morris Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19801

<u>**BY TELEFAX AND FIRST CLASS U.S. MAIL**</u>

Larry Nyhan, Esq.
James F. Conlan, Esq.
Jeffrey C. Steen, Esq.
Sidley Austin LLP
1 South Dearborn Street
Chicago, IL 60603

Jane W. Parver, Esq.
Andrew A. Kress, Esq.
Edmund M. Emrich, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Charles O. Monk, II, Esq.
Jay A. Shulman, Esq.
Saul Ewing LLP
Lockwood Place, 500 East Pratt Street
Baltimore, MD 21202

Peter Van N. Lockwood, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, D.C.  20005

J. Andrew Rahl, Jr., Esq.
John B. Berringer, Esq.
Howard D. Ressler, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020

Lewis Kruger, Esq.
Kenneth Pasquale, Esq.
Denise K. Wildes, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

William S. Katchen, Esq.
Duane Morris LLP
744 Broad Street, Suite 1200
Newark, NJ 07102

James I. McClammy, Esq.
Davis Polk & Wardell
450 Lexington Avenue
New York, NY 10017

Elihu Inselbuch, Esq.
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152

/s/ Marc J. Phillips
Marc J. Phillips (#4445)
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street, P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
mphillips@cblh.com

#456694